```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

| | |
|---|---|
| **RALPH L. TAYLOR, III.,** | * |
| | * |
|     **Plaintiff,** | * |
| | * |
| **vs.** | *  **CIVIL ACTION 07-00768-KD-B** |
| | * |
| **MICHAEL J. ASTRUE,** | * |
| **Commissioner of** | * |
| **Social Security,** | * |
| | * |
|     **Defendant.** | * |

**REPORT AND RECOMMENDATION**

Plaintiff Ralph L. Taylor, III, ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq.  Oral argument was waived.  Upon careful consideration of the administrative record, and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED.**

**I.   Procedural History**

Plaintiff filed an application for disability income benefits on August 11, 1993, and protectively filed an application for supplemental security income benefits on July 22, 1993.  In his applications, Plaintiff alleges disability since May 28, 1993 due to a ruptured disc in his back, torn ligaments in his knees and headaches.  (Tr. 79-81, 118-119, 168).  Plaintiff's applications

were denied initially, and he timely filed a Request for Hearing. (Tr. 82-83, 101-102, 122-123, 126-127, 130).  On May 16, 1995, Administrative Law Judge William L. Ragland ("ALJ Ragland") held an administrative hearing, which was attended by Plaintiff and his representative. (Tr. 58-78).  In a decision dated March 18, 1996, ALJ Ragland found that Plaintiff is not disabled.  (Tr. 16-43). Plaintiff's request for review was denied by the Appeals Council ("AC") on April 14, 1997.  (Tr. 6-7).

Plaintiff filed an appeal with this Court, and on January 12, 1998, the Court remanded the case for further proceedings. (Tr. 808-809).  On remand to the Commissioner, a new hearing was held before Judge Ragland on April 8, 1999.  Judge Ragland again found that Plaintiff is not disabled in an unfavorable decision issued on August 27, 1999. (Tr.  865-878, 1189-1213).  Plaintiff's request for review was granted by the AC on April 17, 2003, and the case was remanded to the Commissioner of Social Security.  (Tr. 892-895).  On remand to the Commissioner, a third hearing was held, this time before Administrative Law Judge Robert G. Goosens ("ALJ Goosens") on March 10, 2004.  The hearing was attended by Plaintiff, his attorney, and a vocational expert. (Tr.1215-1246). In a decision dated September 21, 2005, ALJ Goosens found that Plaintiff is not disabled. (Tr. 759-791). Plaintiff appealed the decision, and on September 5, 2007, the Appeals Counsel ("AC") considered Plaintiff's arguments, and denied the request for

review.  Thus, the ALJ's decision became final.  (Tr. 742-744). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

A.   Whether the ALJ erred by failing to pose a complete hypothetical question to the vocational expert.

B.   Whether the ALJ erred by rejecting the opinion of Stanley Barnes, M.D., Plaintiff's treating physician.

C.   Whether the ALJ erred by failing to find that Plaintiff is presumptively disabled based on meeting or equaling the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (Listing 12.04).

## III. Factual Background

Plaintiff was born on January 14, 1962 and was 33 years old at the time of the first administrative hearing in May 1995. (Tr. 62, 79, 118, 1189, 1215).  Plaintiff has a ninth grade education,  a GED certificate, and one year of vocational school. (Tr. 65, 172). He has past relevant work ("PRW") as a shift manager and grill operator at a restaurant, as a fast food worker, and as a repairman in the Army.  (Tr. 67-68, 139-144, 172, 1226, 1229, 1234).

At the May 1995 hearing,  Plaintiff testified that he worked as a diesel mechanic in the Army while serving in Desert Storm in 1990. (Tr. 64-65, 67).  According to Plaintiff, he went to work as a shift manager for Huddle House following his return from Desert Storm in 1992; however, he was terminated from that job because he

had problems getting along with customers and employees. (Tr. 67). Plaintiff testified that he went to work for a different Waffle House in June or July of 1993, but was unable to do the job because of problems with his knees. (Tr. 69-70). Plaintiff testified that he is unable to work because of his knees, his back, and post traumatic stress disorder (hereinafter "PTSD"). (Tr. 75). According to Plaintiff, he has a 40% service-connected disability rating from the VA based on his knees and back. (Tr. 71). Plaintiff also testified that since Desert Storm, he has problems reading and understanding what he has read due to PTSD. As a result, his mother takes care of his bills. (Tr. 72-74). At the April 1999 hearing, Plaintiff testified that during Desert Storm, a tank hatch closed on his knees, injuring his knees and his back, and that the VA disability rating for his knees and his back have been raised to 50%. (Tr. 1195-1197).

At the March 2004 hearing, Plaintiff testified that he lives with his mother, his father and his daughter. Plaintiff also testified that he had surgery on his knee after he was discharged in 1993, and that he now has a 50% service-connected disability rating from the VA. (Tr. 1223). Plaintiff also reported that he has pain in all his joints, and that the pain medication makes him have to go to the bathroom frequently. (Tr. 1225). According to Plaintiff, his daughter helps him in and out of the tub and sometimes helps him dress. Plaintiff testified that his doctor

suggested he use a wheelchair, if he has one. Plaintiff also testified that he uses a cane, and has knee braces for both knees, a back brace, ankle braces for both ankles, wrist braces for both wrists, and a TENS unit for back pain. (Tr. 1220-1222).

Plaintiff testified that he is being treated for PTSD, and that his depression interferes with his ability to work because he is easily distracted, does not take orders, and is easily agitated. (Tr. 1224). He also testified that the VA has not given him a disability rating based on PTSD. (Tr. 1230). According to Plaintiff, he spends his days sitting in a dark room watching television, or on nice days, sitting outside watching cars go by. Plaintiff also reported that he sleeps four or five hours during the day, but does not sleep well at night. (Tr. 1225-1226).

## IV. Analysis

### A. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792

---

[1]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

    **B.**   **Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§

404.1520, 416.920.[2]

In case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits for the period from May 28, 1993 through December 31, 1998, and for Supplemental Security benefits from July 22, 1993 through the date of his decision. (Tr. 789). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Id. The ALJ concluded that while Plaintiff has the severe impairments of status post arthroscopy of the left knee with

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

partial medial meniscectomy; PTSD versus personality disorder; carpal tunnel syndrome, bilateral; degenerative joint disease; depression; anxiety; and osteoarthritis of the right and left shoulders with possible rotator cuff tendonapathy on the right, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. Id. The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. (Tr. 789-790).

The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") for sedentary work, with occasional handling and pushing/pulling of controls, crawling and overhead reaching, and little or no climbing, stooping, kneeling, crouching and balancing. He further concluded that Plaintiff retains the mental residual functional capacity for less stressful and simple unskilled work, with mild limitations on his ability to perform the activities of daily living, mild limitations on his ability to function socially, moderate limitations on his concentration, persistence, and pace, and no documented episodes of decompensation. (Tr. 790). The ALJ concluded that Plaintiff's RFC precludes him from performing any of his past work. Id. Relying on the testimony of the VE, the ALJ further concluded that, considering Plaintiff's vocational factors and RFC, Plaintiff is able to perform representative occupations existing in significant numbers in the national economy. Id.

Plaintiff's medical history is set forth in detail in the ALJ's decision. (Tr. 768-778)  By way of summary, the relevant evidence of record shows that Plaintiff was treated at VA hospitals in Birmingham, Tuskegee, and Montgomery, at Baptist Medical Center in Montgomery, at Comanche County Memorial Hospital, and at Evergreen Hospital. As noted supra, the ALJ determined that Plaintiff suffers from the following severe impairments: status post arthroscopy of the left knee with partial medial meniscectomy; PTSD versus personality disorder; carpal tunnel syndrome, bilateral; degenerative joint disease; depression; anxiety; and osteoarthritis of the right and left shoulders with possible rotator cuff tendonapathy on the right.

1. **Whether the ALJ erred by failing to pose a complete hypothetical question to the vocational expert.**

Plaintiff asserts that the ALJ failed to pose a complete hypothetical question to the VE.  Specifically, Plaintiff asserts that the ALJ relied upon the VE's testimony to find that there are jobs that Plaintiff can perform; yet, in questions to the VE, the ALJ did not include Plaintiff's moderate limitation in ability to maintain concentration, persistence and pace.  Thus, the ALJ's reliance on the VE's responses constitutes reversible error. Defendant argues that the ALJ specifically found that Plaintiff was not impaired to a disabling degree by his mental impairments, that the medical evidence reflects that Plaintiff exaggerated his mental

9

symptoms, and that any limitation in Plaintiff's ability to maintain concentration, persistence and pace was in fact addressed in the ALJ's hypotheticals which limited Plaintiff to unskilled work.

Following a finding that a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform jobs that are available in the national economy. Doughty v. Apfel, 245 F. 3d 1274, 1278, n.2 (11th Cir. 2001). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question. Pendley v. Heckler, 767 F. 2d 1561, 1563 (11th Cir. 1985). A vocational expert's testimony does not constitute substantial evidence unless the ALJ poses a hypothetical question which comprises all of the claimant's impairments. Id.; Wilson v. Barnhart, 284 F. 3d 1219, 1227 (11th Cir. 2002), *citing* Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089, 120 S. Ct. 1723, 146 L. Ed. 2d 644 (2000).

In the case sub judice, the ALJ, after accessing Plaintiff's RFC[3], presented a number of hypotheticals to the VE during the

---

[3] As noted supra, the ALJ accessed Plaintiff's RFC as follows:

March 10, 2004 administrative hearing.  The first three

---

> In making a determination as to the claimant's physical residual functional capacity, the Administrative Law Judge has assigned determinative evidentiary weight to the findings and conclusions expressed by the examining orthopedist, Dr. Landon Anderson, and the examining neurologist, Dr. Walid Freij . . . . The Administrative Law Judge finds that the physical capacities and limitations set out by Drs. Anderson and Freij represent an accurate assessment of the claimant's ability to do sedentary work-related activities. . . .
>
> Moreover, the opinions offered by Drs. Anderson and Freij are mutually corroborating, and both specialists concurred that the claimant would be limited to sedentary work activity and restricted him from work that required him to extensively stand or walk.  Likewise, with regard to the claimant's mental residual functional capacity, the undersigned has given determinative weight to the opinion expressed by Dr. DeFrancisco in Exhibit 108.  According to Dr. DeFrancisco, the claimant appeared to be malingering, and Dr. Brown, a consultative psychiatrist, reported that the claimant put forth a contrived effort to portray a disabled individual . . . .
>
> The claimant retained the mental residual functional capacity for at least stressful and simple unskilled work tasks (SSRs 85 and 96-9p). The claimant had no more than "mild" limitations on his ability to perform the activities of daily living, no more than "mild" limitations on his ability to function socially, no more than "moderately" documented limitations on his concentration, persistence, and pace, and "no" documented episodes of decompensation.  This total work capacity was not prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the periods of adjudication.

(Tr. 781, 791).

hypotheticals are pertinent because they reference medical evaluations that were accepted by the ALJ[4]. Those hypotheticals were as follows:

> Q: I am going to give you a hypothetical question. Let's assume an individual of the same vocational characteristics that you have identified for Mr. Taylor in your testimony and assume in question one that the physical work-related limitations for such an individual would correspond with Exhibit 112, pages four through six, which is a physical capacities evaluation form completed by a consultative neurologist. Have you reviewed that document?
>
> A: I have, sir.
>
> Q: Based on this combined vocational and physical work-related profile, are you able to identify jobs known to exist in the regional and national economies that such a person could perform including the categories of the Claimant's past relevant work?
>
> A: Yes, sir. There would be no – none of the past relevant work would be applicable. However, I will give you three types of employments that would be found in the national and regional economy. There would be jobs as cashiers, 142,000 in the national economy, 2,000 in the region defined as the State of Alabama. There would be jobs listed as assemblers, 105,000 in the national economy, 1600 in the region. There would be jobs listed as bookkeepers, 85,000 in the national economy, 1300 in the region.
>
> Q: All right. And what skill and exertional level are those three jobs?

---

[4] The last three hypotheticals contained medical evaluations which were rejected by the ALJ. The ALJ is not required to include in the hypotheticals impairments or limitations that have been rejected as unsupported. <u>Crawford v</u>. <u>Commissioner of Social Security</u>, 363 F. 3d 1155, 1161 (11th Cir. 2004).

A:   These would be unskilled in the sedentary category.

Q:   All right.  Question number two, keep the vocational factors the same and keep in mind the occupations you identified in question number one.  Now, let's assume the physical work-related limitations correspond to Exhibit 110, pages four through six, which is a physical capacities evaluation form completed by a consulting orthopedic specialist, Dr. Anderson.  Have you reviewed this document?

A:   I have.

Q:   Would these restrictions eliminate, if not eliminate reduce in numbers, any of the occupations you identified in question number one?

A:   No, sir.  My answer would be the same, an individual who could do sedentary work at the unskilled level.

Q:   No, reduction, no elimination?

A:   Correct, sir.

Q:   Question number three, let's keep the physical limitations the same and vocational factors the same, but let's assume that the individual does have mental work-related limitations and that these limitations would restrict the individual performance of unskilled mental work tasks.  Would this restriction eliminate, if not eliminate reduce in numbers, the occupations you identified in the first two questions?

A:   No elimination and no other revision to the numbers.

(Tr. 1236-1238).

In <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1562-1562 (11th Cir. 1985)(per curiam), the Eleventh Circuit Court of Appeals held that the ALJ's failure to include the plaintiff's severe impairments in

a hypothetical question to a VE was reversible error where the ALJ relied on that VE's testimony to make a disability decision. Moreover, in Owes v Barnhart, 52 Fed. Appx. 486 (11th Cir. 2002) (unpublished memorandum opinion), the Eleventh Circuit reversed and remanded for additional VE testimony because the hypothetical question did not include all the elements of the residual functional capacity as found by the ALJ. The Owes court found as follows:

> When a hypothetical question includes a claimant's physical impairments but fails to mention his psychological impairments, the hypothetical question does not accurately represent a claimant's impairments, and the vocational expert's response to that hypothetical question cannot satisfy the Commissioner's burden of proving that the claimant can perform other work. Pendley v. Heckler, 767 F.2d 1561, 1562-1562 (11th Cir. 1985) (per curiam) … Even though the ALJ in this case described Owes's depression as "mild" and stated that he suffers only "slight" restrictions in his daily living and in maintaining social functioning, this does not give us license to ignore the omission of Owes's mental impairments from the hypothetical question. In Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (per curiam), the claimant also suffered from only "mild" mental impairments, but the court nevertheless reversed because of the failure to include these impairments in the hypothetical question to the vocational expert, finding that "mental and psychological defects can combine with physical impairments" to prevent a claimant from working. Because the second hypothetical question failed to include all of Owes's impairments, the vocational expert's response to that hypothetical is inadequate to support a finding of no disability.

The Commissioner argues that any error

> in the hypothetical question was harmless, because the ALJ considered Owes's mental impairments in determining that he could perform unskilled work, and two of the jobs the vocational expert listed in response to the second hypothetical question involved unskilled work. Although the ALJ found that Owes could perform "simple and routine unskilled jobs consisting of repetitive activities" and the jobs of agricultural produce sorter and sedentary food sorter involve unskilled work, this does not mean that the failure to include the mental impairments in the second hypothetical question was harmless. (Citation omitted). Here, as in Pendley and Brenem, we cannot assume that the vocational expert would have responded in the same way to the second hypothetical question if the question had included Owes's mental impairments. (Citations omitted). We do not know whether the fact that Owes "often" experiences "deficiencies in concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner" would make him unable to perform the job of agricultural produce sorter or sedentary food sorter. Thus, we cannot say that the Commissioner met the burden of proving that Owes could perform other work in the national economy.

Owes, at p. 5-7.

In the case sub judice, the evidence is undisputed that in determining Plaintiff's RFC, the ALJ found that Plaintiff has no more than a "moderate" limitation in the area of concentration and only "mild" limitations with regard to daily activities and social functioning. (Tr. 790)  The evidence is also clear that the ALJ relied upon the VE's testimony to find that Plaintiff could perform other work. (Tr. 788)  While the Commissioner argues that the ALJ's statement, in the third hypothetical that Plaintiff is limited to "unskilled mental work tasks" was sufficient to encompass

Plaintiff's mental limitations, the undersigned disagrees.  A searching review of the transcript from the administrative hearing fails to reveal any discussion of what the ALJ meant by "unskilled mental work tasks" or what the VE understood those terms to mean.  As observed by the Court in Owes, we cannot assume that the VE would have responded in the same way to the third hypothetical question if the question had included Plaintiff's moderate deficiencies in concentration.  See also, Brink v. Commissioner Social Security, 2009 U.S. App. LEXIS 18540 (9th Cir. July 10, 2009)(case remanded because the ALJ's hypothetical question to the VE should have included not only the limitation to "simple, repetitive work," but also the claimant's moderate limitations in concentration, persistence or pace.);  Wiederholt v. Barnhart, 121 F. Appx 833, 839 (10th Cir. 2005)(limitation to simple, unskilled tasks not sufficient to incorporate impairments such as moderate difficulties with maintaining concentration, persistence, or pace.); Clements v. Astrue, 2009 U.S. Dist. LEXIS 8018 (M.D. Fla. February 3, 2009)(case remanded where the ALJ found that the claimant had moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, yet in hypothetical to VE, only stated that claimant was limited to positions requiring no more than occasional contact with the public.); Alhin v. Commissioner of Social Security, 2008 U.S.

Dist. LEXIS 53043 (E.D. Mich. July 11, 2008) (ALJ's hypothetical question, which referred to "simple, routine and repetitive tasks", was not detailed enough to encompass the ALJ's finding that the claimant had a limitation in sustaining focused attention and concentration.); Davis v. Astrue, 2007 U.S. Dist. LEXIS 56163, (E.D. Penn. July 30, 2007)(requiring deficiencies in concentration, persistence or pace to be specified in the hypothetical.); Sellers v. Barnhart, 2004 U.S. Dist. LEXIS 23750, (S.D. Ala. July 2, 2004)(case remanded on a number of grounds, including the ALJ's failure to present element of a moderate limitation in the ability to perform work requiring detailed instruction in the hypothetical question to the VE even though the ALJ included that element in his residual functional capacity determination.)  Accordingly, this case is due to be remanded so that the ALJ can properly incorporate Plaintiff's mental limitation[5].

**Vv  Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability and

---

[5] Because the undersigned agrees with Plaintiff's contention, regarding the hypothecials posed to the VE, there is no need to address Plaintiff's other assignments of error. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the misuse of the expert's testimony alone warrants a reversal, we do not consider the appellant's other claims.").

disability insurance benefits, be **REVERSED and REMANDED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **28th** day of **August, 2009.**

                                          **/s/ SONJA F. BIVINS**
                                   **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is

advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

>    **/s/ SONJA F. BIVINS**
>    **UNITED STATES MAGISTRATE JUDGE**